### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIE MARSDEN** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-6615** |
| | : | |
| **SOUTHWEST AIRLINES CO.** | : | |

**McHUGH, J.**                                                   **July 2, 2026**

### MEMORANDUM

This is a civil action brought by a physically disabled passenger who claims she was denied required assistance by Southwest Airlines employees while checking into her flight at Philadelphia International Airport.  Most significantly, she alleges that she was denied permission to keep a back-up cardiac assistive device at her seat.  Many of Plaintiff's allegations are rooted in the federal Air Carrier Access Act (ACAA), but that is problematic, because no federal court has construed the ACAA to permit a private right of action.  Plaintiff seeks to plead around this obstacle by asserting state law claims for negligence per se rooted in the ACAA's requirements and claims for emotional distress.

Southwest has moved to dismiss, arguing that Plaintiff cannot backdoor an ACAA claim through the common law of negligence, further arguing that she has failed to allege any injury compensable under Texas law, which it contends is controlling.  Southwest is correct that Texas law applies, and that most of Plaintiff's claims are barred.  But her claim for negligence survives, and she has adequately pleaded a physical injury for which Texas law would allow recovery, even though the impairment of cardiac function she alleges was the result of her emotional distress.

I.    **Factual Allegations**

On November 27, 2023, Plaintiff Marie Marsden arrived at Philadelphia International Airport for a Southwest flight from Philadelphia, Pennsylvania to Atlanta, Georgia.  Compl. ¶¶ 6, 9, ECF 1.  Plaintiff suffers from a heart condition, which required implanting a Left Ventricular Assist Device (LVAD) into her chest to assist her weakened heart by pumping blood into her lungs, organs, and tissues.  *Id.* ¶¶ 6–7.  This device is classified as a life-sustaining device that Plaintiff always needs with her, including during air travel.  *Id.* ¶ 7.  The device has an external component that connects to a cable port, called a driveline exit site, inserted near her stomach.  *Id.* ¶ 8.  The driveline is a cord that connects the external medical components to the LVAD attached to Plaintiff's heart.  *Id.*

When purchasing her airline ticket, Plaintiff requested disability accommodation in the form of a wheelchair.  *Id.* ¶ 10.  The ticket she received also included an annotation indicating that she required additional assistance.  *Id.*  After arriving at the airport, Plaintiff asked a Southwest agent at a kiosk inside the airport if someone could assist with her luggage.  *Id.* ¶ 12.  She claims the agent refused and stated that Southwest does not provide those services.  *Id.*  Another passenger overheard Plaintiff's interaction with the agent and offered Plaintiff her wheelchair.  *Id.* ¶ 13.

After Plaintiff arrived at the boarding gate, Southwest agents took her carry-on bags, including bags containing her external medical components and the backup to her LVAD, informed her that she needed to check the bags, and told her she could not bring them into the flight cabin because her medical bags exceeded the allotted carry-on limit.  *Id.* ¶ 15.  Plaintiff explained what the devices were, as well as their purpose, and showed the Southwest agents where the devices connected to her body to emphasize their essential nature.  *Id.* ¶ 16.  However, the

agents refused to allow Plaintiff to bring them on as carry-ons. *Id.* During this interaction, Plaintiff alleges the agents commented that she "did not look disabled." *Id.* ¶ 17.

Plaintiff was in tears for most of the flight due to the stress from this interaction, and her LVAD indicated that her heart rate was at 240 beats per minute. *Id.* ¶ 20. Plaintiff sought medical treatment after suffering "ill effects" from this encounter. *Id.* ¶ 23. She alleges that her medical provider determined the experience exacerbated her preexisting heart condition, causing her to develop an atrial flutter. *Id.* ¶ 24. Based on this alleged misconduct, Plaintiff invokes Pennsylvania law to bring two negligence per se claims against Southwest for violating the ACAA's implementing regulations, 14 C.F.R. §§ 382.91 and 382.121, respectively; and three tort claims— (1) breach of the duty of a common carrier toward disabled or infirm passengers, (2) intentional infliction of emotional distress, and (3) negligent infliction of emotional distress.

## II.    Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.    Discussion

### A.  Texas law governs Plaintiff's claims.

As a threshold matter, the parties dispute which state law governs. The defense invokes Texas law because the ticket Plaintiff purchased constituted a Contract of Carriage containing a Texas choice-of-law provision. It provides as follows:

> [a]ny and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by, construed, and enforced in accordance with the laws of the United States of America and, to the extent not preempted by federal law, the laws of the State of Texas without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted.

Contract of Carriage § 10(c)(1), ECF 5-2 at 55.

3

Issues of contract interpretation are considered substantive, *Beazer E., Inc. v. Mead Corp.*, 34 F.3d 206, 212 (3d Cir. 1994), and a federal court sitting in diversity must apply the forum state's choice-of-law rules, *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Under Pennsylvania law, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 557 A.2d 775, 777 (Pa. 1989)). Pennsylvania courts have adopted Section 187 of the Restatement (Second) of Conflict of Laws, which enforces contractual choice-of-law provisions unless their application would violate a fundamental policy of a state with a materially greater interest. *McIlvaine Trucking, Inc. v. W.C.A.B.*, 810 A.2d 1280, 1286 (Pa. 2002); *see Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007). Specifically, Section 187 provides that a choice-of-law clause will be enforced unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (A.L.I. 1971).

This focus on policy comports with Pennsylvania's general approach to choice of law, "which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964). *Griffith* requires a two-step process. *Melmark, Inc. v. Schutt*, 206 A.3d 1096, 1104–05 (Pa. 2019). A court must first determine whether a true conflict exists between the competing states' laws, which occurs when the laws produce different outcomes. *Id.* at 1104–05. If a true conflict exists, courts then analyze

the governmental interests underlying the issue and determine which state has the greater interest in its law's application.  *Id.* at 1105.  But when a choice-of-law provision is present, instead of merely needing the "greater interest" under *Griffith*, Pennsylvania must show both a materially greater interest and a fundamental policy violation.  *McIlvaine Trucking*, 810 A.2d at 1286.

Here, a true conflict exists between Texas and Pennsylvania's laws, because Pennsylvania recognizes claims for negligent infliction of emotional distress (NIED), and Texas does not. *Compare Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 774 (Pa. Super. Ct. 2022) (listing the four theories of recovery on which to base an NIED claim under Pennsylvania law), *with Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993) (eliminating NIED as a cause of action under Texas law).  Because the Contract of Carriage contains a Texas choice-of-law provision, Pennsylvania law can only override that provision if (1) Pennsylvania has a materially greater interest in the matter, and (2) applying Texas law would contravene a fundamental Pennsylvania policy. *McIlvaine Trucking*, 810 A.2d at 1286.  Neither applies.  The Contract of Carriage bears a substantial relationship to Texas because Southwest is a Texas corporation with its principal place of business in Dallas.  Compl. ¶ 2; *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990) (applying Section 187 and treating a contracting party's residence in the chosen state as a substantial relationship); *see also SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 439 (E.D. Pa. 2014) (applying Section 187 and explaining that, under Pennsylvania law, "[i]t is well settled that when a corporation has a principal place of business within a state, that state bears a substantial relationship to the parties.").

Nor has Plaintiff shown that Pennsylvania has a materially greater interest than Texas or identified any fundamental Pennsylvania policy that enforcing the Texas clause would contravene. Plaintiff argues only that her alleged injuries occurred in Pennsylvania and that she filed suit there.

Pl.'s Opp'n, ECF 12 at 4.  But Plaintiff is a Georgia citizen, Compl. ¶ 1, and Southwest is a Texas corporation that selected Texas law to govern its contracts, *see Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 176 (Tex. App.—Houston [14th Dist.] 2002). Pennsylvania is therefore neither party's home state nor the state whose law the contract specifies. Its only connection is that it is where the alleged injury occurred, and Plaintiff was in transit at the time.  That does not amount to a materially greater interest on the part of Pennsylvania, with the result that Texas law governs Plaintiff's claims.

**B.  Although violations of the ACAA cannot serve as the basis for a negligence per se claim under Texas law, the statute does not preempt other state tort law remedies and has relevance in defining common law duties owed by a common carrier.**

The ACAA prohibits air carriers like Southwest from discriminating against "an otherwise qualified individual" because "the individual has a physical or mental impairment that substantially limits one or more major life activities."  49 U.S.C. § 41705(a)(1).  Plaintiff's first and second counts assert negligence per se claims against Southwest in violation of two subsections within 14 C.F.R. § 382, the ACAA's implementing regulation.  Compl. ¶¶ 27, 34.

Although the Third Circuit has not directly addressed whether a private party may bring a claim for alleged ACAA violations, *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 132 n.18 (3d Cir. 2010), all five circuit courts that have considered this question have held that it does not, *see Love v. Delta Air Lines*, 310 F.3d 1347, 1360 (11th Cir. 2002); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1271 (10th Cir. 2004); *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597 (2d Cir. 2011); *Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018); *Segalman v. Sw. Airlines Co.*, 895 F.3d 1219, 1225 (9th Cir. 2018) ("Congress did not intend to create an implied private cause of action to remedy violations of the ACAA.").  I consider those decisions persuasive authority and adopt their reasoning here.

6

Plaintiff's first negligence per se claim alleges that Southwest violated 14 C.F.R. § 382.91[1] "by failing to assist the Plaintiff with her carry-on luggage despite her suffering from a disability, of which the Defendant was aware." Compl. ¶ 28. Her second negligence per se claim alleges that Southwest violated 14 C.F.R. § 382.121[2] "by counting Plaintiff's baggage containing her medical devices, one of which attached to her person, towards their limits on carry-on baggage." *Id.* ¶ 35.

Southwest objects based on Texas precedent holding that where the legislature has not provided a civil cause of action, a statute that regulates or criminalizes activity may not form the basis for a negligence per se claim, because to recognize such a claim would frustrate the legislature's intent.[3] Mot. to Dismiss, ECF 5-1 at 7–8 (citing *Armstrong v. Sw. Airlines Co.*, No. 20-3610, 2021 WL 4391247 (N.D. Tex. Sept. 24, 2021) (quoting *Reeder v. Daniel*, 61 S.W.3d 359, 364 (Tex. 2001))). Plaintiff offers no rejoinder, so I agree with Southwest that her negligence per se claims are barred.

But that does not end the inquiry, because the Third Circuit has held that ACAA regulations do not preempt other state tort remedies, including negligence claims, *Elassaad*, 613 F.3d at 131, and can be relevant to the standard of care an airline owes to a passenger, *id.* at 133 n.20; *see also*

---

[1] Under 14 C.F.R. § 382.91(b), carriers must "provide or ensure the provision of assistance requested by or on behalf of a passenger with a disability, or offered by carrier or airport operator personnel and accepted by a passenger with a disability, in moving from the terminal entrance (or a vehicle drop-off point adjacent to the entrance) through the airport to the gate for a departing flight, or from the gate to the terminal entrance (or a vehicle pick-up point adjacent to the entrance after an arriving flight)."

[2] Under 14 C.F.R. § 382.121(a)(3), carriers must permit passengers with a disability to bring into the aircraft cabin "[o]ther assistive devices for stowage or use within the cabin (e.g., prescription medications and any medical devices needed to administer them such as syringes or auto-injectors, vision-enhancing devices, and POCs, ventilators and respirators that use non-spillable batteries, as long as they comply with applicable safety, security and hazardous materials rules)."

[3] The Texas decisions Southwest cites refer to deference to the Texas state legislature. For purposes of the analysis here, I will assume that Texas courts would pay the same deference to Congress.

7

*Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1007 (9th Cir. 2013) (holding that the ACAA and its implementing regulations establish the standard of care an airline owes to a passenger regarding assistance in traversing the airport terminal before, between, and after flights).  Specifically, a passenger may look to state law for breach of duty, causation, and damages.  *See Elassaad*, 613 F.3d at 125, 134.

In Count 3, Plaintiff alleges that Southwest, as a common carrier, breached the duty it owed to disabled or infirm passengers, causing her "physical and emotional pain and suffering."  Compl. ¶¶ 40, 42.  Under Texas law, a negligence claim requires establishing (1) a legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach.  *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022).  The Complaint pleads each in factual terms: that Southwest, as a common carrier, owed Plaintiff a duty of care as a disabled or infirm passenger; that it breached that duty; and that the breach caused her physical injury in the form of an atrial flutter and accompanying emotional distress.  Compl. ¶¶ 40, 42.

Southwest concedes that Plaintiff can bring a general negligence claim but argues that she cannot meet the required element of injury because all she has alleged is a physical manifestation of emotional distress, and in the absence of a physical injury, she cannot recover damages.  It roots this argument in the Texas Supreme Court's decision in *Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993), which eliminated liability for negligent infliction of emotional distress. Courts applying *Boyles* have held that, with limited exceptions, where a plaintiff's claimed harm arises from a distressing experience, she must allege a physical injury rather than emotional disturbance alone. *See, e.g., Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999); *Villafuerte v. United States*, No. 16-619, 2017 WL 8793751, at *11 (S.D. Tex. Oct. 11, 2017).

Plaintiff responds that she has pleaded a physical injury: an atrial flutter.  Her answering brief defines atrial flutter as an "abnormal heart rhythm, or arrhythmia" that "occurs when a short circuit in the heart causes the upper chambers (atria) to pump very rapidly."  Pl.'s Opp'n at 11.[4] The Complaint is ambiguous as to whether the flutter was a transient condition that existed only on the day of the flight, but at oral argument, Plaintiff's counsel clarified that it is a newly diagnosed chronic condition that requires separate treatment.  In Plaintiff's view, this suffices to state a claim.

Neither party identifies the precise issue presented by this case.  The question is whether Texas law allows a plaintiff to pursue a negligence claim when a defendant's alleged negligent conduct triggers an emotional disturbance that in turn causes an actual, concrete physical injury or illness.  In a case decided after *Boyles*, the Texas Supreme Court recognized that Texas law permits such a claim, stating that "when the defendant's negligence causes a mental shock which produces a serious bodily injury, the defendant is liable for that injury provided it was foreseeable."  *City of Tyler v. Likes*, 962 S.W.2d 489, 495–96 (Tex. 1997).  In *Likes*, the Texas Supreme Court cited precedent dating back to the late 19th century.  *See id.* at 496 (first citing *Houston Elec. Co. v. Dorsett*, 194 S.W.2d 546 (Tex. 1946) (plaintiff suffered "brain deterioration" after almost being struck by a bus); and then citing *Hill v. Kimball*, 13 S.W. 59 (Tex. 1890) (permitting recovery for pregnant woman who miscarried after witnessing a violent assault)); *see also Johnson v. Methodist Hosp.*, 226 S.W.3d 525, 529 (Tex. App.—Houston [1st Dist.] 2006).  The Fifth Circuit Court of Appeals also allowed recovery by a Texas citizen for hypertensive incidents following receipt of

---

[4] Citing *Atrial Flutter*, Johns Hopkins Med. https://www.hopkinsmedicine.org/health/conditions-and-diseases/atrial-flutter (last visited June 29, 2026). *See also* L. Brent Mitchell & Jonathan G. Howlett, *Atrial Flutter*, Merck Manual, Professional Edition (Sept. 2024), https://www.merckmanuals.com/professional/cardiovascular-disorders/specific-cardiac-arrhythmias/atrial-flutter.

an erroneous death notice by telegram. *See Kaufman v. W. Union Tel. Co.*, 224 F.2d 723, 731 (5th Cir. 1955) (applying federal common law).

Taking the well-pleaded allegations as true and viewing them in the light most favorable to Plaintiff, the Complaint alleges a diagnosed atrial flutter that the experience caused Plaintiff to develop. Compl. ¶ 24; Pl.'s Opp'n at 11. Under Texas law, that is a plausible allegation of a physical injury, not of emotional distress nor its manifestations. Whether Plaintiff can ultimately prove that Southwest's conduct caused the atrial flutter is not before the Court at this stage. Because Plaintiff has adequately alleged a physical injury, Southwest's motion to dismiss Count 3 is denied.[5]

### C. Plaintiff does not state an IIED claim.

The Texas Supreme Court formally adopted the tort of intentional infliction of emotional distress (IIED) in *Twyman v. Twyman*, 855 S.W.2d 619, 620 (Tex. 1993), incorporating the Restatement (Second) of Torts § 46's formulation. To recover, a plaintiff must establish: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Id.* at 621. Liability arises "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Although Texas recognizes that a defendant's awareness of a plaintiff's preexisting emotional vulnerability bears on whether conduct is extreme and outrageous, that principle does not relax the tort's demanding threshold. *Id.* To show severe emotional distress, Plaintiff "must

---

[5] The proper use of the ACAA and regulations promulgated under the Act in determining the standard of care, *Elassaad*, 613 F.3d at 133 n.20, and the admissibility of evidence about ACAA regulations, are subjects better reserved for trial.

bring forth clear and specific evidence that they suffered distress so severe that no reasonable person could be expected to endure it." *Cunningham v. Waymire*, 612 S.W.3d 47, 65 (Tex. App.—Houston [14th Dist.] 2019). Courts ground this inquiry in factors such as the "intensity and duration of the distress," *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex. App.—Dallas 2001), as well as whether the plaintiff sought treatment, *Higginbotham v. Allwaste, Inc.*, 889 S.W.2d 411, 417 (Tex. App.—Houston [14th Dist.] 1994). Mere worry, anxiety, vexation, embarrassment, or anger are insufficient. *Cunningham*, 612 S.W.3d at 65. Even accepting the Complaint's well-pleaded allegations as true and construing them in the light most favorable to Plaintiff, the alleged conduct does not approach the level of extreme and outrageous conduct Texas law requires to state a claim. If proven at trial, Plaintiff's account of what transpired indicates an undoubtedly distressing experience, particularly given that she felt it necessary to lift her shirt to reveal the life-sustaining heart pump connected to her body to Southwest employees, in a public airport, only to still be told she did not "look disabled." But Texas, like most jurisdictions, sets an extraordinarily demanding threshold for IIED that requires conduct going well beyond rude or humiliating treatment. This encounter, however unfortunate, does not clear that high threshold. Thus, Count 4 is dismissed.

### D. Texas does not recognize NIED claims.

Finally, Plaintiff brings a claim for NIED in Count 5. As discussed above, Texas does not recognize this tort. *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 87 (5th Cir. 1997) ("In 1993, the Texas Supreme Court eliminated negligent infliction of emotional distress as a cause of action.") (citing *Boyles*, 855 S.W.2d at 593)). Accordingly, this count is also dismissed.

11

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be denied as to Count 3 but granted in all other respects.  An appropriate order follows.

 /s/ Gerald Austin McHugh
United States District Judge

12